**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| IN RE: )<br>*EX PARTE* APPLICATION OF )<br>BANCO MERCANTIL DE )<br>NORTE, S.A., INSTITUCIÓN DE )<br>BANCA MÚLTIPLE, GRUPO )<br>FINANCIERO BANORTE and )<br>ARRENDADORA Y FACTOR )<br>BANORTE, S.A. DE C.V., SOCIEDAD )<br>FINANCIERA DE OBJETO MÚLTIPLE, )<br>GRUPO FINANCIERO BANORTE, )<br>    Applicants, )<br>FOR ORDER PURSUANT TO )<br>28 U.S.C. § 1782 TO OBTAIN )<br>DISCOVERY IN AID OF )<br>FOREIGN PROCEEDINGS ) | Misc. Case No.: 3:23-mc-8 |

**MEMORANDUM IN SUPPORT OF APPLICATION FOR AN
ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY
FOR USE IN A FOREIGN PROCEEDING**

## I.   INTRODUCTION

Applicants Banco Mercantil del Norte, S.A., Institución de Banca Múltiple, Grupo Financiero Banorte ("Banorte") and Arrendadora y Factor Banorte, S.A. de C.V., Sociedad Financiera de Objeto Múltiple, Grupo Financiero Banorte ("Banorte A&F" and, together with Banorte, the "Banorte Parties") submit this *ex parte* Application to the Court under Section 1782 for an order requiring Cartograf USA, Inc. ("Cartograf USA"), Timmons Group, Inc. ("Timmons Group"), and the Economic Development Authority of the County of Chesterfield (the "EDA") to produce documentary and/or testimonial evidence for use in ongoing and forthcoming proceedings

1

in Mexico, relating to a scheme perpetrated by Juan José Páramo Riestra ("Mr. Páramo") and Cartograf, S.A. de C.V. ("Cartograf") to defraud the Banorte Parties.

Cartograf USA, Timmons Group, and the EDA have relevant, discoverable information that will assist in the ongoing proceedings in Mexico, given that: (i) Mr. Páramo is an officer, director, and ultimate beneficiary of Cartograf USA; and (ii) invoices, communications, transfers of money, and land purchases pertaining to Cartograf USA will speak to Mr. Páramo's and Cartograf's ongoing breaches of their agreements with the Banorte Parties, as well as their violation of the precautionary measures decreed by the Mexican courts.

The documents sought in this Application, relating directly to Mr. Páramo's scheme to defraud the Banorte Parties and subsequent efforts to evade the reach of Mexican courts, are relevant and necessary to support ongoing proceedings in Mexico. Because Cartograf USA, Timmons Group, and the EDA are residents of Virginia and are outside the reach of Mexican courts, the requested evidence can only be obtained through this Application. The statutory requirements of Section 1782 and the discretionary factors enumerated by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004) are all met here, and the Court should therefore grant the Application.

## II. BACKGROUND AND STATEMENT OF FACTS

### A. Relevant Parties

Grupo Financiero Banorte is one of Mexico's largest financial institutions, offering retail and wholesale banking services to individuals, small and midsized entities, government entities, and corporate clients throughout Mexico. The Banorte Parties are both subsidiaries of Grupo Financiero Banorte.

Mr. Páramo is a client of the Banorte Parties, both individually and through his company Cartograf. Mr. Páramo fled Mexico to avoid his obligations to the Banorte Parties, as well as Mexican court orders and a warrant for his arrest.

Cartograf manufactures and sells customized cardboard and cellulose paper products. Mr. Páramo is the sole administrator and legal representative of Cartograf and used Cartograf to perpetrate a fraudulent scheme against the Banorte Parties, as described below.

Cartograf USA is a Virginia-based packaging manufacturing company with facilities in Chesterfield, Virginia, for which Mr. Páramo acts as officer, director, and ultimate beneficiary.

Timmons Group is a Virginia-based engineering and technology firm that, on information and belief, has provided services to and received payments from Mr. Páramo. It specializes in civil, environmental, geographic information system, and surveying services.

The EDA is a political subdivision of the Commonwealth of Virginia. On October 4, 2019, the EDA sold Cartograf USA a parcel of land Cartograf USA currently uses for manufacturing operations.

Cartograf USA, Timmons Group, and the EDA are believed to possess information and documents that are relevant to the Banorte Parties' litigation in Mexico.

**B.     The Fraudulent Scheme Perpetrated by Mr. Páramo and Cartograf**

In 2018 and 2019, Mr. Páramo and Cartograf entered into a series of financial agreements and promissory notes with the Banorte Parties related to Cartograf's business. Under these agreements, the Banorte Parties provided Mr. Páramo and Cartograf millions of dollars in loans, and Mr. Páramo and Cartograf promised to repay those loans under a set schedule. In addition, Mr. Páramo and Cartograf entered into a factoring arrangement to sell certain accounts receivable

3

to Banorte A&F. Under that factoring agreement, Mr. Páramo promised to collect accounts receivable from Cartograf's clients and immediately turn over the collections to Banorte A&F.

Instead of honoring his obligations, Mr. Páramo absconded with a large portion of the money he borrowed. Starting almost immediately, he began transferring Cartograf's assets to another entity named Cartwood, S.A. de C.V. ("Cartwood"), whose shareholders include Mr. Páramo's direct relatives, leaving Mr. Páramo and Cartograf indebted, by millions, to the Banorte Parties. *See* Ex. 1 (Declaration of Ricardo Aguirre Marín). Mr. Páramo also concealed funds, including collections due to the Banorte Parties under the factoring agreements. Mr. Páramo and Cartograf ultimately defaulted on their loans in 2021, leaving millions of dollars outstanding.

The details of this fraudulent scheme are set out in more detail below.

**1. Mr. Páramo and Cartograf Enter Into a Series of Agreements with the Banorte Parties**

In 2018, Banorte A&F entered into a financing agreement with Mr. Páramo and Cartograf for three pieces of machinery used in Cartograf's business (the "Financing Agreement"). Under the Financing Agreement, Cartograf authorized a direct debit of its monthly billings in favor of Banorte A&F. Mr. Páramo and Cartograf also executed a promissory note that included an acceleration clause that triggered automatically in the event of a missed payment. Mr. Páramo and Cartograf have been in arrears for payments under the Financing Agreement since March 2021, with an outstanding balance exceeding USD $4 million. *See id.*

Banorte, Mr. Páramo, and Cartograf also entered into a current account credit facility agreement in 2018, with Mr. Páramo serving as joint and several obligor (the "Credit Agreement"). In connection with the Credit Agreement, Mr. Páramo and Cartograf executed nine promissory notes. Mr. Páramo and Cartograf have been in default under the Credit Agreement since April 2021 and now owe over USD $10 million thereunder. *See id.*

4

Later, in 2019, Banorte, Mr. Páramo and Cartograf entered into a financial factoring agreement with Banorte A&F (the "Factoring Agreement"). Under the Factoring Agreement, Banorte A&F purchased Cartograf's outstanding accounts receivable. Also in connection with the Factoring Agreement, Banorte A&F entered into a total of sixteen factoring agreements, assigning Banorte A&F the right to collect on several invoices from Cartograf to the following companies: Industria Decoradora de Envases, S. de R.L. de C.V.; Cervecería Modelo, S. de R.L. de C.V.; Cervecería Modelo de Torreón, S. de R.L. de C.V.; Compañía Cervecera de Zacatecas, S. de R.L. de C.V.; Cervecería Yucateca, S. de R.L. de C.V.; Artesanas de Malta y Cabañas, S. de R.L. de C.V.; Industria Vidriera del Potosí, S. de R.L. de C.V.; Anheuser-Busch, LLC; Compañía Cervecera del Trópico, S. de R.L. de C.V.; and Cervecería Modelo del Centro, S. de R.L. de C.V. *Id*.

In connection with the Factoring Agreement, Mr. Páramo and Cartograf were delegated and entrusted with the administration and collection of the receivables contained in the invoices that were subject to the financial factoring (the "Receivables"). Mr. Páramo agreed to act as a depositary of the delegated portfolio documents, and of moneys received in payment of the delegated portfolios, until the corresponding credits were paid to Banorte A&F. Mr. Páramo was thus obligated to collect the Receivables assigned to Banorte A&F and pay Banorte A&F as the Receivables were collected from Cartograf's clients. *Id.*

### 2. Mr. Páramo Conceals and Diverts Funds Owed to the Banorte Parties

Mr. Páramo collected the Receivables, but told Banorte A&F he had not collected them, instead keeping the money for himself in violation his obligations under the Factoring Agreement. Once Banorte A&F discovered these facts, it made multiple collection attempts, all of which were unsuccessful. On June 9, 2021, Banorte A&F attempted to collect on the amounts it was owed by

5

Mr. Páramo and Cartograf under the Factoring Agreement—amounts that at that point exceed USD $17 million and MN $73 million—by formally demanding the same at Cartograf's business address. Upon arriving at Cartograf's address, however, the Banorte Parties discovered that Cartograf was no longer located there and that, instead, another company—Cartwood, whose shareholders include Mr. Páramo's direct relatives—had taken its place and was carrying out the same business activities as Cartograf, at the same location.  It thus became clear to the Banorte Parties that Mr. Páramo was utilizing Cartwood to conceal and retain the assets that he failed to provide to Banorte A&F as they were contractually obligated to under the Credit Agreement, the Financing Agreement, and the Factoring Agreement.  *Id.*

As a result of these unlawful, fraudulent acts—and their failure to pay the Banorte Parties—Mr. Páramo and Cartograf defaulted under their agreements with Banorte and Banorte A&F and owe amounts in excess of USD $31 million and MN $17 million.  Mr. Páramo has fled Mexico to avoid paying his outstanding debts and evade the warrant currently out for his arrest.  *See id.*

### C. The Civil Proceedings in Mexico

In April 2021, the Banorte Parties filed a writ before the *Juzgado Cuarto de lo Civil de Proceso Escrito del Tribunal Superior de Justicia de la Ciudad de México* (the "Fourth Civil Court of Mexico City") requesting provisional injunctions to freeze the assets of Mr. Páramo and Cartograf, and to prevent Mr. Páramo from leaving the jurisdiction of that court. The Banorte Parties further requested that Cartograf's client debtors whose loans were subject to the Factoring Agreement (the "Cartograf Debtors") be ordered to refrain from paying any amounts due to Mr. Páramo or Cartograf, and instead deposit any such amounts in the registry of the Fourth Civil Court of Mexico City. *Id.*

On May 12, 2021, the Fourth Civil Court of Mexico City granted the Banorte Parties' requested precautionary measures. *Id.*

On June 10, 2021, the Banorte Parties asked the Fourth Court of Mexico City to pierce the corporate veil of Cartograf in order to extend the existing precautionary measures to several companies associated with Cartograf (the "Related Entities"). The Banorte Parties further requested that the clients of the Related Entities be ordered to report the amounts of pending payments derived from their commercial relations with the Related Entities and deposit any such amounts with the court. *Id.*

On June 17, 2021, the Fourth Civil Court of Mexico City pierced Cartograf's corporate veil, thus extending the precautionary measures to the following Related Entities: Cartwood; Verónica Oñate Vieyra (ex-wife of Mr. Páramo); Corpar, S.A. de C.V.; Corporativo Cartograf, S.A. de C.V.; Transportes Cartograf, S.A. de C.V.; Inmobiliaria Jopar, S.A. de C.V.; Inmuebles Cartograf, S.A. de C.V.; and Paragon Desarrollos, S.A.P.I. de C.V. The Fourth Civil Court of Mexico City subsequently ordered the issuance of *oficios* to notify the Related Entities of, and the

7

proper authorities charged with, the extension of the precautionary measures to the Related Entities and the freezing of their assets. *Id.*

In conjunction with the precautionary measures being decreed, the Banorte Parties brought several "*proceso ejecutivos*" (enforcement proceedings) against Mr. Páramo and Cartograf to formally seek enforcement of the promissory notes underlying the parties' agreements and obtain compensation for the damages resulting from Mr. Páramo's and Cartograf's contractual breaches of the parties' agreements. Further, a criminal complaint has been filed based on the fraud perpetrated by Mr. Páramo and Cartograf, and their fraudulent acts are being investigated by the relevant authorities in Mexico. *Id.*

### D. The Discovery Sought is Relevant and Necessary for the Ongoing Mexican Proceedings

Cartograf USA, Timmons Group, and the EDA have discoverable information relevant to the aforementioned proceedings against Mr. Páramo, Cartograf, and related entities (the "Mexican Proceedings"). Such information includes any information relevant to: the Factoring Agreement, Mr. Páramo's scheme to defraud the Banorte Parties, as well as Mr. Páramo's continued concealment of funds and evasion of the precautionary Mexican court orders.

Specifically, the Banorte Parties seek from Cartograf USA documents relating to: Cartograf USA's relationship with Cartograf and/or Cartwood, including any agreements between the entities; Cartograf USA's bank account and assets; Cartograf USA's tax records; Cartograf USA's exchanges with the Related Entities; the incorporation of the company Cartograf USA; payments, transfers of money, or other documents exchanged between Cartograf USA, on the one hand, and Cartograf or Cartwood on the other hand; Cartograf USA's exchanges with any clients related to the Banorte Parties' agreements with Mr. Páramo and Cartograf; Cartograf USA's shareholder registry, meeting minutes, and resolutions; and Cartograf USA's books and records,

showing customer balances, payments, and invoices, as well as any other sources of funds or liabilities of Cartograf USA.  The Banorte Parties also seek deposition testimony of the corporate representative of Cartograf USA with knowledge of Cartograf USA's dealings with Cartograf and Mr. Páramo.

From Timmons Group, the Banorte Parties seek any records relating to payments, including wire transfers, between Timmons Group and Mr. Páramo, Cartwood, Cartograf, or Cartograf USA.

From the EDA, the Banorte Parties seek any records relating to Cartograf USA's purchase of real property in Virginia, including any relevant agreements, closing statements, or records of payment relating the same.

On information and belief, Cartograf USA has been used by Mr. Páramo to conceal assets belonging to Cartograf and which would otherwise be subject to the Mexican courts' orders.  This information is thus relevant and necessary to the ongoing legal proceedings in Mexico, as it will assist the Mexican courts in ascertaining the location of the funds the Banorte Parties are contractually entitled to, both under the agreements between the parties and as a consequence of the freezing of assets decreed by the Mexican courts.  The discovery sought here is also relevant to understanding Mr. Páramo's and Cartograf's transfers of assets to evade their obligations to the Banorte Parties.  Such information will assist the Mexican courts in understanding the facts surrounding the fraud perpetrated against the Banorte Parties, supporting the Mexican Proceedings, and enforcing the asset-freezing and turnover orders issued by the Mexican courts.

### III.     LEGAL STANDARD

This Court should grant the Banorte Parties' *ex parte* application because it satisfies both Section 1782's statutory requirements and the discretionary factors the U.S. Supreme Court set forth in *Intel Corp.*, 542 U.S. at 264–65.  Further, granting this application would allow the Banorte Parties to timely secure documents that are highly relevant to the proceedings before the Mexican courts.  This Court's granting of the application would thus serve Section 1782's "twin aims of 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.'"  *Id.* at 252 (citation omitted); *see also Al Fayed v. United States,* 210 F.3d 421, 424 (4th Cir. 2000) (citation omitted) (explaining that the bounds of a district court's discretion are informed by these twin aims).

#### A.     This Application Satisfies Section 1782's Statutory Requirements

Section 1782 provides that "[t]he district court of the district in which a person resides or is found may order him to give testimony or statement or to produce a document or other thing for use in a proceedings in a foreign or international tribunal."  The purpose of Section 1782 is "to provide federal-court assistance in the gathering of evidence for use in a foreign tribunal," *Intel Corp.*, 542 U.S. at 241, "reflect[ing] a long-term — over 150-year — policy of Congress to facilitate cooperation with foreign countries by 'provid[ing] federal-court assistance in gathering evidence for use in foreign tribunals.'"  *Servotronics, Inc. v. Boeing Co.*, 954 F.3d 209, 212–13 (4th Cir. 2020) (quoting *Intel*, 542 U.S. at 247).[1]

---

[1]     The Banorte Parties submit this Application *ex parte*, as that is the standard manner in which Section 1782 applications are commenced.  *See e.g.*, *Gushlak* v. *Gushlak,* 486 Fed. App'x. 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*.").

Under well-settled law, discovery pursuant to § 1782 is appropriate and should be authorized where three statutory factors are met and where a series of four discretionary factors set forth in *Intel* also support discovery.  All statutory and discretionary factors support discovery here.

The statutory factors are: "(1) the person from whom discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or an interested person."  *In re Application of Purolite for an Order Pursuant To 28 U.S.C. § 1782 To Conduct Discovery for Use in A Foreign Proceeding*, No. CV 3:16-MC-00056-JMC, 2016 WL 1294772, at *2 (D.S.C. Apr. 4, 2016) (internal citations omitted).  Each of Section 1782's three statutory requirements are satisfied here.

First, Cartograf USA, Timmons Group, and the EDA "reside[] or [are] found" in this district.  Cartograf USA's manufacturing facility is located in Chesterfield, Virginia, the county pertaining to the grantor of Cartograf USA's real property in Virginia, the EDA.  Timmons Group, meanwhile, is headquartered in Richmond, Virginia.  The Court may accordingly order discovery from Cartograf USA, Timmons Group, and the EDA under Section 1782.

Second,  the discovery the Banorte Parties seek is "for use in a proceeding in a foreign or international tribunal."  *See* 28 U.S.C. § 1782(a).  Specifically, the Banorte Parties request the discovery at issue for use in the Mexican Proceedings.  Where the discovery sought is for use in a foreign litigation, that is sufficient to satisfy the "for use" requirement.  *See e.g.*, *In re Application of Purolite for an Order Pursuant To 28 U.S.C. § 1782 To Conduct Discovery for Use in A Foreign Proceeding*, No. CV 3:16-MC-00056-JMC, 2016 WL 1294772, at *2 (D.S.C. Apr. 4, 2016) (concluding that applicant "seeks the discovery 'for use in a proceeding before a foreign tribunal'

because the requested discovery is for use in Purolite AG v. Hitachi-GE Nuclear Energy, Ltd., a matter currently pending in the Tokyo District Court in Tokyo, Japan"); *Oncology Found. v. Avanza Dev. Servs.,* LLC, No. CV PX 17-1445, 2017 WL 2376769, at *1 (D. Md. May 30, 2017) (granting application where discovery was sought for use in proceedings before the European Patent Office).

Third, the Banorte Parties are undoubtedly "interested person[s]" within the meaning of Section 1782, as they are parties to the Mexican Proceedings. *See Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782 . . . .") (alteration in original); *id.* at 256 ("[A] complainant 'possess[es] a reasonable interest in obtaining [judicial] assistance,' and therefore qualifies as an 'interested person' within any fair construction of that term.") (alterations in original). By virtue of the fact that they possess "a reasonable interest in obtaining judicial assistance" in the Mexican Proceedings, the Banorte Parties qualify as "interested person[s]." *See id.*

### B. The *Intel* Factors Weigh in Favor of Granting the Application

The discretionary factors set forth in *Intel* also support the granting of this Application.

#### 1. Cartograf USA, Timmons Group, and the EDA Are Not Parties to the Mexican Proceedings

The first *Intel* factor is whether "the person from whom discovery is sought is a participant in the foreign proceeding." *See Intel*, 542 U.S. at 264. The Supreme Court has explained that the need for Section 1782 discovery is less apparent when the discovery target is already subject to the foreign court's jurisdiction. In contrast, if the discovery target is "'outside the foreign tribunal's jurisdictional reach,'" there is a greater need for the court to issue discovery. *In re Request for Judicial Assistance from the Dist. Court in Svitavy, Czech Republic,* 748 F. Supp. 2d 522, 526 (E.D. Va. 2010) (quoting *Intel*, 524 U.S. at 264).

This factor weighs in favor of granting the Application. Cartograf USA, Timmons Group, and the EDA are not participants in the Mexican Proceedings, and as U.S.-based entities, they are not easily within the reach of the Mexican courts. Because the discovery sought here by the Banorte Parties "may be unobtainable absent § 1782(a) aid," the first *Intel* factor weighs in favor of granting this Application. *See id*.

### 2. Mexican Courts Would Be Receptive to Discovery Assistance from U.S. Courts

The second *Intel* factor—the nature of the applicable foreign proceedings and tribunal, and the tribunal's receptivity to the assistance of U.S. federal courts—also weighs in favor of granting the requested discovery. Courts applying this factor "have applied the general approach that, in the absence of a foreign court's clear rejection of the assistance, the § 1782 application should be granted." *In re Newbrook Shipping Corp.*, No. MC JKB-20-0150, 2020 WL 6451939, at *6 (D. Md. Nov. 3, 2020) (citing *In re Polymer Solutions Int'l, Inc.*, Civ. No. DKC-18-1864, 2019 WL 1239778, at *6 (D. Md. March 18, 2019)). Courts typically analyze whether there has been a "clear directive" from the relevant foreign tribunal that it would not accept evidence produced with the aid of United States federal courts. *In re Chevron Corp.*, No. 7:10-MC-00067, 2010 WL 4883111, at *3 (W.D. Va. Nov. 24, 2010). Such clear directives generally derive from "***authoritative proof*** that [the] foreign tribunal would reject evidence obtained with the aid of section 1782, such as judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign proceedings." *Id.* (alteration in original) (internal quotation marks and citation omitted) (emphasis added).

Here, there is no indication that the Mexican courts would reject the documentary evidence sought through this Application. *See* Ex. 1. To the contrary, this Court has on at least one other occasion granted an application for Section 1782 discovery sought in connection with a potential

13

civil suit in Mexico. *See In re Application of Rivada Networks*, No. 1:16–mc–24 (E.D. Va. Dec. 9, 2016) (Order). Other District Courts have also repeatedly concluded that there is no authoritative evidence that Mexican courts are hostile to the assistance of U.S. federal courts under Section 1782. *See, e.g.*, *Grupo Mexico Sab De CV*, No. CV314MC00073GBH, 2014 WL 12691097, at *3 (N.D. Tex. Oct. 17, 2014) ("[T]here is no evidence to suggest that the Mexican court is hostile to U.S. federal courts' assistance under § 1782(a)."). Because there is no indication that the evidence sought here would be rejected by the Mexican courts, this discretionary factor weighs in favor of granting this Application.

### 3. The Application Does Not Seek to Circumvent Foreign Proof-Gathering Restrictions

The third *Intel* factor also weighs in favor of granting this Application. "This factor entails neither a discoverability requirement nor a quasi-exhaustion requirement ... that would force litigants to seek information through the foreign or international tribunal before requesting discovery from the district court." *In re Newbrook Shipping Corp.*, No. MC JKB-20-0150, 2020 WL 6451939, at *6 (D. Md. Nov. 3, 2020) (internal citations and quotation marks omitted). Rather, "[i]n determining whether a petition is an effort to circumvent foreign proof-gathering restrictions, the issue is whether the discovery is being sought in bad faith." *In re Chevron Corp.*, No. 7:10-MC-00067, 2010 WL 4883111, at *3 (W.D. Va. Nov. 24, 2010) (citations omitted).

The Banorte Parties plainly seek discovery in good faith. They request information that is outside the reach of Mexican courts and is relevant to their claims—exactly the purpose Section 1782 exists to serve. Further, as set forth in the attached declaration addressing Mexican law, the evidence sought through this Application is expected to be admissible before the Mexican courts, would not be prohibited under Mexican law, and would not otherwise circumvent any proof-gathering restrictions in Mexico. *See* Ex. 1.

14

In short, the Banorte Parties' Section 1782 application is not "an attempt to circumvent foreign discovery procedures . . . in the parties' pending [Mexican] suits." *In re Eli Lilly & Co.*, 37 F.4th 160, 168 (4th Cir. 2022) (internal quotation marks omitted).  Rather, the Banorte Parties properly seek additional information to provide to the Mexican courts through the only appropriate means available to it—Section 1782 aid.  As such, the third discretionary factor strongly weighs in favor of granting the discovery sought here.

### 4. The Information Sought Is Not Unduly Burdensome

The fourth *Intel* factor—"whether the § 1782 request is 'unduly intrusive or burdensome'"—strongly favors the granting of this Application.  *In re Newbrook Shipping Corporation,* 31 F.4th 889, 894 (4th Cir. 2022) (quoting 28 U.S.C. § 1782(a)).  What the Banorte Parties seek here is specific, targeted, and based on the fact that Cartograf USA is believed to be used by Mr. Páramo to conceal assets that would otherwise be subject to the Mexican courts' orders.  This information is thus relevant and necessary to the ongoing legal proceedings in Mexico.  Specifically, the Banorte Parties seek particular financial and contractual records and communications of Cartograf USA, Timmons Group, and the EDA to evidence Mr. Páramo's and Cartograf's fraud, continued breaches of the parties' agreements, and violation and evasion of the precautionary measures decreed by the Mexican courts.  Thus, far from seeking any and all documents from Cartograf USA, Timmons Group, and the EDA, the Banorte Parties here only request records that pertain directly to the conduct underlying the Mexican Proceedings and/or to Mr. Páramo's and Cartograf's violation of the precautionary measures decreed by the Mexican courts.  The records sought are, moreover, likely kept in the ordinary course of business.

The Banorte Parties have thus narrowly tailored their discovery requests to only that information directly relevant and material to the claims underlying the Mexican Proceedings.

Indeed, the Banorte Parties here simply seek the type of evidence produced in the normal course of litigation in Mexico. *See* Ex. 1. Further, the Banorte Parties have limited the relevant period of inquiry from September 2018 through the present date, thus representing a discrete set of documents corresponding to a specific set of events within a defined period of time. *See id.* This Application is therefore neither unduly intrusive nor unduly burdensome. Accordingly, the fourth *Intel* factor strongly favors granting this Application.

## IV.     CONCLUSION

The Banorte Parties' Application satisfies both the statutory requirements and the discretionary factors to obtain discovery assistance under Section 1782. The Banorte Parties thus respectfully request that the Court grant its *ex parte* Application and enter an Order under 28 U.S.C. § 1782 allowing it leave to obtain testimonial evidence from Cartograf USA, and documentary evidence from Cartograf USA, Timmons Group, and the EDA. The Banorte Parties reserve the right to request the issuance of subpoenas for the testimony of Timmons Group and the EDA and/or their representatives that may be relevant to the proceedings in Mexico.

Dated: July 17, 2023

Respectfully submitted,

HOGAN LOVELLS US LLP

*/s/ Kellie Majcher*
Kellie Majcher (VSB# 96162)
Hogan Lovells US LLP
8350 Broad Street, 17th Floor
Tysons, VA 22102
Telephone: (703) 610-6100
Facsimile: (703) 610-6200
Kellie.Majcher@hoganlovells.com

Richard C. Lorenzo (*pro hac vice* forthcoming)
Hogan Lovells US LLP

16

600 Brickell Avenue, Suite 2700
Miami, Florida 33131
Telephone: (305) 459-6550
Facsimile: (305) 459-6550
Richard.Lorenzo@hoganlovells.com

*Counsel for Banorte Mercantil de Norte, S.A., Institución de Banca Mútiple, Grupo Financiero Banorte; and Arrendadora y Factor Banorte, S.A. de C.V., Sociedad Financiera de Objeto Múltiple, Grupo Financiero Banorte*