IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

IN RE APPLICATION OF BANCO MERCANTIL
DE NORTE, S.A., INSTITUCIÓN DE BANCA
MÚLTIPLE, GRUPO FINANCIERO BANORTE
AND ARRENDADORA Y FACTOR BANORTE,
S.A. DE C.V., SOCIEDAD FINANCIERA DE
OBJETO MÚLTIPLE, GRUPO FINANCIERO
BANORTE,

        Applicants,                            Misc. No. 3:23mc08 (DJN)

FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782
TO OBTAIN DISCOVERY IN AID OF FOREIGN
PROCEEDINGS

## MEMORANDUM OPINION

This matter comes before the Court on Cartograf USA, Inc.'s ("Cartograf USA" or "the

Company") Motion to Quash the Subpoena, ("Motion" (ECF No. 16)). On August 22, 2023, the

Court granted the *ex parte* Application for an Order Pursuant to 28 U.S.C. § 1782 to Obtain

Discovery for Use in Foreign Proceedings, (the "Application" (ECF No. 1)), filed by Banco

Mercantil del Norte, S.A., Institutción de Banca Múltiple, Grupo Financiero Banorte ("Banorte")

and Arrendadora y Factor Banorte, S.A. de C.V., Sociedad Financiera de Objeto Múltiple, Grupo

Financiero Banorte ("Banorte A&F" and, together with Banorte, the "Banorte Parties"). (ECF

No. 9.) On September 12, 2023, Cartograf USA filed its Motion to Quash the Subpoena in lieu

of compliance. For the following reasons, the Court will DENY Cartograf USA's Motion,

except with respect to Cartograf USA's tax records, which the Court will shield from disclosure

at this juncture.

## I.  BACKGROUND

On July 17, 2023, the Banorte Parties filed their Application for subpoenas requiring three Virginia-based entities — Cartograf USA, Timmons Group, Inc. (the "Timmons Group") and the Economic Development Authority of the County of Chesterfield (the "EDA") — to produce testimony and documentary evidence relevant to "ongoing and forthcoming proceedings in Mexico."  (ECF No. 1, at 1–2.)  Those proceedings concern the Banorte Parties' allegations that Juan José Páramo Riestra ("Páramo") and his company, Cartograf, S.A. de C.V. ("Cartograf"), defrauded the Banorte Parties of millions of dollars by "enter[ing] into a series of financial agreements and promissory notes with the Banorte parties" before subsequently absconding with "a large portion of the money" borrowed.  (ECF No. 2, at 2–4.)  The Banorte Parties sought documents and testimony which they contended will shed light on the mechanics of Páramo's alleged scheme to defraud and his "continued concealment of funds" from the Mexican courts.  (*Id.* at 8.)

The Court granted the Application.  (ECF No. 9.)  First, the Court confirmed its authority under 28 U.S.C. § 1782(a) to determine whether subpoenas shall issue for gathering evidence for use in foreign tribunals.  (*Id.* at 2.)  Next, the Court found that the Banorte Parties satisfied each of the § 1782(a) requirements for a federal court to grant such assistance:  whether (1) the person from whom the discovery is sought resides or is found in the district of the district court to which application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by a foreign or international tribunal or "any interested person."  (*Id.* at 2–3.)  Finally, the Court addressed the discretionary factors, set forth by the Supreme Court in *Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241 (2004), that guide the Court's application of § 1782(a):

"(1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 request 'conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;' and (4) whether the proposed discovery requests are 'unduly intrusive or burdensome.'"

*In re P.T.C. Prod. & Trading Co., AG*, 2020 WL 7318100, at *2 (W.D.N.C. Dec. 11, 2020)

(quoting *Intel*, 542 U.S. at 264–65). The Court concluded that all four factors counseled in favor

of granting the Application and issuing the subpoenas. (ECF No. 9, at 3–5.)

On September 12, 2023, Cartograf USA filed its Motion in lieu of compliance, along

with a Memorandum in Support. (ECF Nos. 16, 17.) Cartograf USA makes three primary

arguments. First, Cartograf USA argues that the Banorte Parties fail to satisfy the second

statutory requirement under § 1782(a), i.e., that the requested discovery is "for use" in a

proceeding before a foreign tribunal.[1]  (Mem. in Supp. of Cartograf USA's Mot. to Quash

Subpoena ("Mem.") at 2) (ECF No. 17).)  Second, Cartograf USA argues that production of the

documents or testimony here would implicate Cartograf USA's right against self-incrimination

in Mexico and therefore would violate a legal privilege, in contravention of § 1782(a).  (*Id.* at 6.)

Third, Cartograf USA argues that the Banorte Parties cannot meet the *Intel* discretionary factors.

(*Id.* at 2.)[2]

---

[1]     The parties do not dispute that the first and third § 1782(a) requirements are met. (ECF No. 21, at 5.)

[2]     Cartograf USA also highlights that Banorte Parties filed a separate § 1782 Application in the United States District Court for the Southern District of Texas ("the Texas Application"). (ECF No. 17-1.)  In Cartograf USA's telling, the Texas Application indicates that the Banorte Parties "are casting a broad net in a fishing expedition that is neither particular nor proportional to Banorte's stated needs" in this case. (Mem. at 5.)  Because the Motion at issue here concerns the Application that *this* Court granted, and as resolution of this Motion does not implicate the Texas Application, the Court refrains from further discussion of the Texas Application at this juncture. *See* 28 U.S.C. § 1782(a) ("The district court of the district in which a *person resides or is found* may order him to give his testimony or statement or to produce a document or other

3

On September 26, 2023, the Banorte Parties filed their Opposition to Cartograf USA's Motion, arguing that the Court should deny the Motion and allow discovery to proceed. (ECF No. 21.) On October 2, 2023, Cartograf USA filed its Reply, rendering Cartograf USA's Motion to Quash the Subpoena ripe for review. (ECF No. 23.)

## II.    STANDARD OF REVIEW

The Court confronts a motion to quash a subpoena issued pursuant to 28 U.S.C. § 1782, a statute that "represents nearly 150 years of efforts by Congress to encourage collaboration with foreign tribunals." *In re Newbrook Shipping Corp.*, 31 F.4th 889, 894 (4th Cir. 2022). "Section 1782 affords the district courts wide discretion in responding to requests for assistance in proceedings before foreign tribunals." *In re Naranjo*, 768 F.3d 332, 347 (4th Cir. 2014) (quoting *Al Fayed v. United States,* 210 F.3d 421, 424 (4th Cir.2000)). As noted above, § 1782(a) imposes three mandatory requirements that a federal court must conclude are met before granting a subpoena pursuant to § 1782(a): (1) the person from whom the discovery is sought resides or is found in the district of the district court to which application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by a foreign or international tribunal or "any interested person." 28 U.S.C. § 1782(a); *Intel*, 542 U.S. at 246.

If the Court finds that the party requesting the subpoena satisfies these statutory requirements, then the Court "retains discretion in granting or denying these orders" based on an equity-like balancing test. *In re Newbrook*, 31 F.4th at 896. This test requires that the Court pay "particular attention to the four factors identified in *Intel*:

---

thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.") (emphasis added). As Cartograf USA acknowledges, the Company "is a Delaware corporation that is registered to conduct business in Virginia." (Mem. at 3.)

4

> (1) the involvement of 'the person from whom discovery is sought' in the foreign proceeding, (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government, court or agency to U.S. federal-court judicial assistance,' (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States,' and (4) whether the request is 'unduly intrusive or burdensome' in which case it 'may be rejected or trimmed.'"

*Id.* (quoting *Intel*, 524 U.S. at 264–65). "The ultimate balance" of the *Intel* factors "remains well within the district court's broad discretion and addresses common discovery concerns." *In re Newbrook*, 31 F.4th at 896. Indeed, "*Intel* does not mandate that *every* factor support a court's exercise of discretion or that all factors need even be considered." *See In re Eli Lilly & Co.*, 37 F.4th 160, 168 (4th Cir. 2022) (holding that a district court did not abuse its discretion in heavily weighing two of the four *Intel* factors when it denied a § 1782(a) discovery application) (emphasis added). Instead, *Intel* "provided the factors to illuminate considerations relevant to the decision of whether to authorize assistance for use in proceedings before a foreign tribunal." *Id.*

### III.    ANALYSIS

The Court therefore begins its analysis with the mandatory § 1782(a) factors. For the following reasons, the Court finds that the Banorte Parties have satisfied these mandatory requirements for granting discovery here. The Court then exercises its discretion to examine the four *Intel* factors and decides that their "ultimate balance" weighs toward the Banorte Parties. *In re Newbrook*, 31 F.4th at 896.

### A.    Mandatory § 1782(a) Factors

Regarding the first mandatory § 1782(a) requirement, as the Court already determined in its August 22, 2023 order, (ECF No. 9, at 2), Cartograf USA — the relevant target of the requested discovery — can be found in this District. Cartograf USA acknowledges that it "is a

5

Delaware corporation that is registered to conduct business in Virginia," while also stating that it "is not actively conducting business in the United States." (Mem. at 3.)  The Company states that although it purchased land in Chesterfield County, Virginia to build a manufacturing facility, "construction for the facility was never finished." (*Id.*)  But Cartograf USA does not outright argue that the Banorte Parties fail to meet the first statutory § 1782(a) requirement, i.e., that the Company is located within this District, and the Court sees no reason to disturb its prior finding on this factor. *See In re Newbrook Shipping Corp.*, 620 F. Supp. 3d 298, 308 (D. Md. 2022) (analyzing only the mandatory § 1782(a) requirements that presented an actual dispute between the parties).  The Company bought land in Chesterfield County, possesses a partially constructed manufacturing facility there and is registered to conduct business in Virginia. (Mem. at 3); *see In re Eli Lilly.*, 37 F.4th at 166 (approvingly citing Black's Law Dictionary (3d ed. 1933), for defining "found" with respect to a corporation "as requiring that the corporation 'be doing business in such state through an officer or agent *or by statutory authority in such manner as to render it liable then to suit and to constructive or substituted service of process*'") (emphasis added).  Cartograf USA can be "found" in this District.

The Parties also do not dispute the third mandatory § 1782(a) requirement, i.e., that the Banorte Parties constitute "interested person[s]" in a foreign proceeding.  As the Court already found, the Banorte Parties satisfy this condition, because they constitute parties to a civil action before the Fourth Civil Court of Mexico City. (ECF No. 9, at 2.); *see Intel*, 542 U.S. at 256 (a "litigant" is "included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782 . . . .").

Cartograf USA does, however, argue that the Banorte Parties fail to satisfy the second mandatory § 1782(a) requirement, i.e., that the discovery is "for use" in a legal proceeding

before a foreign tribunal. (Mem. at 6–8.) To satisfy this condition, "the evidence sought must be 'for use' in a foreign proceeding," and the Court "must find that there is a reasonable possibility that the evidence sought 'will be employed with some advantage or serve some use in the proceeding.'" *In re Newbrook*, at 895. Where a party identifies both an *ongoing* foreign action and a *proposed* foreign action as bases for satisfying this condition, the Fourth Circuit has held that a district court should ensure that the proposed action is not "too speculative" to qualify as a "proceeding." *Id.* However, if a party has identified a particular foreign proceeding, the party does not necessarily fail this statutory condition by having not yet filed a lawsuit. *See, e.g.*, *In re Rivada Networks*, 230 F. Supp. 3d 467, 469 (E.D. Va. 2017) (noting that the magistrate judge approved § 1782(a) subpoenas where the sought-after information qualified as relevant to both a constitutional appeal and a "*potential* civil lawsuit in Mexico") (emphasis added).

Cartograf USA contends that the Banorte Parties fail the "for use" requirement, arguing that they have not stated what information they expect to find from certain documents, such as corporate filings, and have failed to specify how they would use the discovery materials in criminal or civil proceedings in Mexico. (Mem. at 6.) The Banorte Parties counter that they have provided the Court with details of the relevant civil proceedings in Mexico, including the Banorte Parties' civil proceedings to freeze Cartograf Mexico's assets, to seek enforcement of alleged promissory notes and contracts and to obtain alleged contract-based damages. (Banorte Parties' Mem. in Opp. to the Mot. to Quash Subpoena, ("Opp.") (ECF No. 21) at 3, 6.) Indeed, the Application laid out an alleged fraudulent scheme committed by Páramo, whom the Application described as "the sole administrator and legal representative of Cartograf," (ECF No. 2, at 3); identified the specific civil proceedings in Mexico at issue and the information sought from Cartograf USA, (*id.* at 7–9); and explained why the information would be relevant and

7

necessary to the ongoing legal proceedings in Mexico. In particular, the Application stated the following:

> This information is thus relevant and necessary to the ongoing legal proceedings in Mexico, as it will assist the Mexican courts in ascertaining the location of the funds the Banorte Parties are contractually entitled to, both under the agreements between the parties and as a consequence of the freezing of assets decreed by the Mexican courts. The discovery sought here is also relevant to understanding Mr. Páramo's and Cartograf's transfers of assets to evade their obligations to the Banorte Parties. Such information will assist the Mexican courts in understanding the facts surrounding the fraud perpetrated against the Banorte Parties, supporting the Mexican Proceedings, and enforcing the asset-freezing and turnover orders issued by the Mexican courts.

(*Id.* at 9.) In addition, the Banorte Parties contend that "Cartograf USA has been used by Mr. Páramo to conceal assets belonging to Cartograf and which would otherwise be subject to the Mexican courts' orders. (*Id.*) Therefore, the Court finds that "a reasonable possibility" exists that the detailed information regarding Cartograf USA's business, including its bank account, assets and documents related to its relationship with its parent company, among other items sought by the Application,[3] could provide "some advantage or serve some use" to the Banorte Parties in prosecuting their civil claims against Páramo and pursuing related assets. *In re Newbrook*, 31 F.4th at 895.

Cartograf USA makes much of the fact that the Application provides scant details about a criminal complaint that the Banorte Parties have allegedly initiated against Cartrograf Mexico, arguing that the Banorte Parties' alleged "lack of candor" about this complaint merits quashing the subpoena. (Mem. at 6–7; Cartograf USA's Reply Br. in Further Supp. of its Mot. to Quash ("Reply"), (ECF No. 23), at 4.) To be sure, other than a passing reference to the fact that "a criminal complaint has been filed based on the fraud perpetrated by Mr. Páramo and Cartograf,"

---

[3]      The Court closely examines *infra* Cartograf USA's argument that the tax records fall under a qualified privilege.

the Application lacks information on the criminal complaint filed against the Company. (ECF No. 2, at 8.) And as Cartograf USA points out, at least one district court has recently found that where a requesting party failed to provide any details regarding the nature of a purported criminal investigation for which the party needed the requested discovery, the discovery request did not satisfy the "for use" statutory factor. (Mem. at 8, citing *In re Application of Republic of Turk for an Order Under 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Legal Proceeding*, 2021 U.S. Dist. LEXIS 133119, \*12–13 (N.D. Ill. July 16, 2021) (hereinafter "*In re Turkey*").) However, there, the requesting party hinged its "for use" argument *entirely* on "vague and conclusory statements from two Turkish officials" regarding the purported criminal investigation. *Id.* at \*13.

By contrast, the Banorte Parties devote several pages of the Application, along with the declaration from the Banorte Parties' Mexican counsel in the civil proceedings, and hundreds of pages of Mexican proceeding court documents, to detail the *civil* proceedings for which the discovery materials would be of use. (ECF No. 2 at 7–8; ECF No. 3 at 20–283.) What's more, the Banorte Parties have already (1) secured judicial relief in Mexico to pierce the corporate veil of Cartograf, (2) obtained provisional injunctions to freeze the assets of Páramo and Cartogaf and (3) brought civil enforcement proceedings to obtain compensation from alleged contractual breaches. (ECF No. 2, at 7–8.) Though the criminal complaint gets scant attention from the Banorte Parties, the evidence sought from Cartograf USA — business records detailing the Company's financial inflows and outflows and relationships with its parent company, Páramo and related entities — appears closely related to the Banorte Parties' claims against Páramo and Cartograf in the ongoing civil proceedings. Similarly, the Court concludes that "there is a reasonable possibility" that deposition testimony from Cartograf USA's corporate representative

9

"with knowledge of Cartograf USA's dealings with Cartograf and Mr. Páramo," (ECF No. 2, at 9) would "serve some use" to the Banorte Parties in the civil proceedings, as such testimony would plausibly shed light on relevant funds and the concealment of sought-after assets. *In re Newbrook*, 31 F.4th at 895. Accordingly, Cartograf USA's analogy to *In re Turkey* is inapposite.

The Fourth Circuit's *In re Newbrook* holding bears close examination on this point. Vacating a district court's dismissal of a motion to quash, the Fourth Circuit held that because the district court "seemed to agree that *some* evidence sought was for use" in an overly "speculative" foreign action, the district court erred by not restricting the subpoena's evidence to what would be "of use" in a separate foreign action that counted as a genuine "proceeding." *In re Newbrook*, 31 F.4th at 895 (emphasis added). The Fourth Circuit vacated the *In re Newbrook* district court's dismissal of the motion to quash after being unable to determine from the complex record which components of the requested evidence related to the permissible proceeding, as opposed to the impermissibly speculative one. *Id.* (ruling that "[t]here may well be some overlap between the two actions but satisfying the for-use condition required specifying the evidence sought for the . . . the only qualifying foreign action," because "[m]erely including one permissible category cannot bless a list of other, impermissibly sought evidence"). Indeed, a party subjected to a § 1782(a) subpoena should not have to "guess at which documents [the requesting party] wants for which actions." *Id.*

But here, the Application and related filings lay out the Mexican civil actions in detail and claim that Páramo has used Cartograf USA "to conceal assets belonging to Cartograf and which would otherwise be subject to the Mexican courts' orders." (ECF No. 2, at 9.) While the requested discovery materials *may* also be relevant to the unspecified criminal complaint, they certainly appear to be "of use" to civil proceedings in which the Banorte Parties seek to locate

10

and retrieve assets allegedly concealed by Páramo. *See In re Application of Sadeq*, 2021 WL 4844754, at \*17 (M.D.N.C. Oct. 18, 2021) (noting "that the 'for use' factor imposes only a '*de minimis*' burden upon a Section 1782 applicant") (emphasis in original). This is therefore not a situation where the requesting party improperly blended different pieces of desired evidence into an indecipherable stew. The nexus between the civil proceedings and requested information appears to be sufficiently strong to satisfy the § 1782(a) statutory "of use" requirement.

### B.     Discretionary § 1782(a) Considerations

The Court now turns to the discretionary *Intel* factors. As noted above, the Court retains wide discretion in applying and balancing these factors, which are:

> "(1) the involvement of 'the person from whom discovery is sought' in the foreign proceeding, (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government, court or agency to U.S. federal-court judicial assistance,' (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States,' and (4) whether the request is 'unduly intrusive or burdensome' in which case it 'may be rejected or trimmed.'"

*In re Newbrook*, 31 F.4th at 896 (quoting *Intel*, 524 U.S. at 264–65). The Court already determined that, pursuant to the *Intel* factors, the Application made a compelling showing that the subpoena to Cartograf USA should issue. (ECF No. 9, at 3.) However, because the Motion argues that all four factors weigh in favor of quashing the subpoena, the Court revisits its analysis and examines Cartograf USA's arguments for each factor.

### 1.     Participation in a Foreign Proceeding

If a party qualifies as a nonparticipant, this factor generally weighs in favor of granting the requested discovery, whereas a party's status as a participant in a foreign proceeding "would militate *against* granting the requested assistance, because '[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order [the respondent] to produce evidence.'" *In re*

11

*Request for Jud. Assistance from the Dist. Ct. in Svitavy, Czech Republic*, 748 F. Supp. 2d 522, 526 (E.D. Va. 2010) (hereinafter "*In re Czech Republic*") (quoting *Intel*, 524 U.S. at 264). Cartograf USA concedes that the Company is not a participant in foreign proceedings, but states that its controlling shareholders — who the Company states have access to the requested discovery — are. (Mot. at 9.) In Cartograf USA's view, the Banorte Parties do not need a § 1782(a) application to obtain the requested materials, because they could simply seek the evidence from the shareholders through the Mexican courts, which the Company argues are better positioned to weigh the proper procedures at issue in evaluating Cartograf USA's potential rights to resist discovery. (*Id.* at 10.) To Cartograf USA, the Banorte Parties' reliance on a U.S. court for these materials raises questions about why they have not pursued this discovery request in the Mexican court adjudicating their civil claims. (*Id.*) The Banorte Parties respond that § 1782(a) does not impose an exhaustion requirement on the requesting party, and that crediting Cartograf USA's arguments on this factor "would require this Court to analyze and reach detailed conclusions about the scope of discoverable information, admissible criminal evidence and the reach of the jurisdiction of Mexican courts." (Opp. at 9.) In addition, they represent that "Páramo has not cooperated in any aspect of the Mexican Proceedings and has instead absconded from the jurisdiction of the Mexican courts to evade responsibility for his actions." (*Id.*)

As the Banorte Parties note, courts have repeatedly rejected requiring a party to exhaust alternate avenues of discovery before resorting to a § 1782(a) application, as neither the statute nor the Supreme Court in *Intel* mandated such an approach. (*Id.*, citing *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1098 (2d Cir. 1995) (characterizing a party's lack of exhaustion as an "impermissible factor" for the court to consider); *In re Veiga*, 746 F. Supp. 2d 8, 24 (D.D.C. 2010) ("Section 1782(a) does not incorporate an exhaustion requirement, and an applicant is not

12

required to first seek discovery from the foreign tribunal."); *In re Application of Imanagement Servs. Ltd.*, 2005 WL 1959702, at *5 (E.D.N.Y. Aug. 16, 2005); and *Infineon Techs. AG v. Green Power Techs. Ltd.*, 247 F.R.D. 1, 5 (D.D.C. 2005).) The fact that Cartograf USA's controlling shareholders qualify as participants in a foreign proceeding does not transform the Company itself into a participant. Accordingly, the Court declines to break from the established line of case law rejecting the judicial imposition of an exhaustion requirement on the party requesting discovery in a § 1782(a) application. This factor therefore favors denying the Motion.

### 2.    Receptivity to U.S. Judicial Assistance

Cartograf USA argues that "the nature of the foreign tribunal, the character of proceedings underway abroad, and the receptivity of the foreign government court, or agency to federal-court judicial assistance," *Intel*, 542 U.S. at 264, weighs in favor of quashing the subpoena. (Mot. at 10–11.) As the Court has already noted in its prior order, (ECF No. 9, at 4), absent a clear directive or authoritative proof that the foreign tribunal would reject the evidence obtained, courts generally conclude that the second *Intel* factor counsels in favor of granting a § 1782 application. *In re Chevron Corp.*, 2010 WL 4883111, at *3 (W.D. Va. Nov. 24, 2010) (quoting *Euromepa*, 51 F.3d at 1100). On the other hand, if reliable evidence exists that the foreign tribunal would not use the requested material *at all*, "it may be irresponsible for a district court to order discovery, especially where it involves substantial costs to the parties involved." *In re Newbrook*, 620 F. Supp. 3d at 311. Asserting that the Declaration of Ricardo Aguirre Marín, (ECF No. 3), constitutes the Banorte Parties' "only evidence" on this factor, Cartograf USA emphasizes that Marín — the Banorte Parties' attorney for the ongoing civil proceedings in Mexico — "is neither a government official nor a public prosecutor." (Mot. at 10–11.)

13

To Cartograf USA, Marín's status as an advocate for the Banorte Parties drains his declaration of any persuasive value on the question of whether a Mexican tribunal would be receptive to this Court's assistance with discovery.  (*Id.*)  And to be sure, discovery requests that come directly from foreign officials or tribunals carry greater weight on this factor.  *See, e.g., In re Czech Republic*, 748 F. Supp. 2d at 527 (finding that a foreign court exhibited clear receptiveness to the assistance of a court within this District, when the request for assistance came from the foreign court itself, "not by a litigant operating independently"); *In re Turkey*, 2021 U.S. Dist. LEXIS 13311, at *17 ("The Republic of Turkey is receptive to this Court's assistance, as evidenced by a letter authored by the Turkish Ambassador . . . and a declaration from Ankara's public prosecutor.").

But while Marín's declaration generates less persuasive value than would a direct request from the relevant Mexican authorities, the Court reiterates that Cartograf USA, not the Banorte Parties, bears the burden on this factor.  In the absence of "reliable evidence" that the Mexican tribunal would not use any of the requested material, the second *Intel* factor counsels in favor of granting a § 1782 application.  *In re Newbrook*, 620 F. Supp. 3d at 311; *In re Chevron*, 2010 WL 4883111, at *3.  Cartograf USA returns to the "cursory" nature of the Banorte Parties' references to a criminal complaint, arguing that in the absence of detailed information about this criminal complaint, the Court cannot ascertain enough about the foreign tribunal.  (Mot. at 11.)  But as already discussed, the Application and related materials *do* provide copious details regarding the *civil* proceedings for which the requested materials appear pertinent.  The Court does not agree that the absence of corresponding details regarding *other* litigation for which the requested discovery materials may be relevant rises to the level of "reliable evidence" that the Mexican courts would be unreceptive to this Court's assistance.

14

Furthermore, Cartograf USA's contention that Marín's inability to confirm that the requested evidence will be admissible in Mexico does not bear on this factor. *In re Czech Republic*, 748 F. Supp. 2d at 527 ("Indeed, the Supreme Court has instructed that the district courts are to refrain from delving into the similarly technical question of discoverability under foreign laws in considering a § 1782 request for judicial assistance."). And while Cartograf USA has failed to present a clear directive or authoritative proof that the foreign tribunal would reject the evidence obtained, *In re Chevron*, 2010 WL 4883111, at *3, the Banorte Parties (who, again, do not carry the burden on this factor) highlight numerous cases demonstrating Mexican courts' general receptivity to U.S. courts' assistance in discovery. (Opp. at 11, citing *In re Rivada Networks*, 230 F. Supp. 3d 467 (E.D. Va. 2017); *Bush v. Cardtronics, Inc.*, 2020 WL 6261694, at *4 (S.D. Tex. Oct. 23, 2020); and *Grupo Mexico Sab De CV*, 2014 WL 12691097, at *3 (N.D. Tex. Oct. 17, 2014).) The second factor therefore weighs in favor of the Banorte Parties.

### 3. Circumvention of Proof-Gathering Restrictions

Cartograf USA next argues that the Banorte Parties' discovery request obscures what the Company contends is their actual motive — gathering evidence for criminal proceedings against Cartograf USA — thereby constituting "an attempt to circumvent foreign-proof-gathering restrictions or other policies of a foreign country or the United States." (Mot. at 11, citing *Intel*, 542 U.S. at 265.) Courts in this District have held that when a requesting party has already asked for the same information before a foreign tribunal, the third *Intel* factor weighs against granting the § 1782(a) application. *In re Eli Lilly & Co.*, 580 F. Supp. 3d 334, 342 (E.D. Va. 2022), *aff'd*, 37 F.4th 160 (4th Cir. 2022) (holding that the discovery request could be an attempt to circumvent foreign discovery procedures); *see also In re Newbrook*, 620 F. Supp. 3d at 311 (concluding that a foreign court's rejection of a discovery request on the same issue counsels

15

against a U.S. court "granting of a similarly grounded request"). At the same time, this

circumvention factor "entails neither a discoverability requirement nor a quasi-exhaustion

requirement . . . that would force litigants to seek information through the foreign or international

tribunal before requesting discovery from the district court." *In re Newbrook Shipping Corp.*,

2020 WL 6451939, at \*6 (D. Md. Nov. 3, 2020) (cleaned up), *overruled on other grounds by In

re Newbrook*, 31 F.4th 889, 894 (4th Cir. 2022). Ultimately, as the Court noted in its prior order,

(ECF No. 9, at 4–5), the key consideration "in determining whether a petition is an effort to

circumvent foreign proof-gathering restrictions . . . is whether the discovery is being sought in

bad faith." *Chevron*, 2010 WL 4883111, at \*3.

      Here, Cartograf USA points to the existence of the Mutual Legal Assistance Treaty

("MLAT") between Mexico and the Untied States, contending that the Banorte Parties seek to

bypass the MLAT to avoid scrutiny of their discovery request by the U.S. Department of Justice

("DOJ"). (Mot. at 12.) MLATs between the United States and a foreign country enable law

enforcement authorities to obtain evidence for criminal investigations, prosecutions and

proceedings after the DOJ Criminal Division's Office of International Affairs reviews the

discovery request. U.S. DEP'T. OF JUSTICE, *Mutual Legal Assistance Treaties of the United

States ("MLATs")* (April 2022).[4] The DOJ review process "assures that the U.S. government's

expertise and analytic rigor is applied to the application, including to assure that the discovery is

not sought for ulterior (non-prosecutive) ends." *Fed. Republic of Nigeria v. VR Advisory Servs.,

Ltd.*, 499 F. Supp. 3d 3, 7–9 (S.D.N.Y. 2020). To Cartograf USA, the Application constitutes an

improper end run around the well-established MLAT process for sharing discovery in criminal

---

[4]     This DOJ guidance is available at https://perma.cc/8Z5P-LLW6.

proceedings, given the apparent existence of a criminal complaint in Mexico arising out of the alleged fraud by Páramo and the parent company Cartograf Mexico. (Mot. at 12–13.)

Cartograf USA overlooks that private parties cannot rely on MLATs, which are only available for criminal law enforcement authorities.[5] Moreover, as the Court has discussed at length, the Banorte Parties do not base the Application solely or even predominately on a criminal proceeding. Instead, the Application and related exhibits provide a detailed record of the ongoing *civil* proceedings for which the requested evidence appears to be "of use," while noting the existence of a criminal complaint. (ECF Nos. 1–3.) Cartograf USA spotlights the *In re Turkey* district court's warning that a requesting party's use of a § 1782(a) application can raise concerns about circumvention of the MLAT process when a party seeks material for a criminal investigation. (Mot. at 12–13, citing *In re Turkey*, 2021 U.S. Dist. LEXIS 13311, at *20–21.) But *In re Turkey* dealt with foreign prosecutors "seeking to use the American civil legal process to investigate purported criminal activity supposedly undertaken in the United States — and, to boot, matters that authorities in the U.S. declined to prosecute criminally," comprising "the exact scenario contemplated by the MLAT." *In re Turkey*, 2021 U.S. Dist. LEXIS 13311, at *19. Here, private parties seek information for ongoing civil proceedings in Mexico, and Cartograf USA does not suggest that U.S. authorities declined to prosecute conduct at issue. The MLAT pathway thus does not apply to this fact pattern.

Furthermore, the Banorte Parties represent that "Páramo has not cooperated in any aspect of the Mexican Proceedings and has instead absconded from the jurisdiction of the Mexican

---

[5]     U.S. DEP'T. OF JUSTICE, *Frequently Asked Questions Regarding Evidence Located Abroad* (last accessed Sept. 29, 2023), available at https://perma.cc/5JET-R2HH ("MLATs are reserved for use by the criminal law enforcement authorities of the parties, which include prosecutors and criminal investigators. MLATs are not available for use by private parties, including criminal defendants.").

courts to evade responsibility for his actions." (Opp. at 9.) In light of this alleged obstruction, Cartograf USA does not persuade the Court that the same information would necessarily be available in Mexico. *Cf. CFE Int'l LLC v. Denham Cap. Mgmt. LP*, 2023 WL 2988745, at \*8 (D. Mass. Mar. 6, 2023) (ruling that where subpoenas "seek documents and testimony that seemingly would be available from individuals and entities in Mexico," this fact signals "an attempt to circumvent proof-gathering restrictions"). The Company also has not presented evidence that the Mexican civil courts have deemed the Banorte Parties' claims to be meritless or previously denied their requests for these discovery materials, which would have tipped this factor toward Cartograf USA. *In re Elliott Assocs. L.P.*, 2022 WL 1159692, at \*4 (W.D.N.C. Apr. 19, 2022).

Nonetheless, Cartograf USA contends that the third *Intel* factor supports quashing the subpoena, because the Banorte Parties aim to circumvent the Company's constitutional privilege against self-incrimination in Mexico. (Mot. at 13–14.) In support, Cartograf USA filed a legal opinion from a Mexican law firm, Schutte & Delsol Gojon, analyzing Mexican criminal statutes and legal authority to conclude that compelling "an individual and/or legal entity" in a jurisdiction where they are not facing criminal charges to provide information that could be used against them in a Mexican criminal proceeding would implicate the Mexican right against self-incrimination. (ECF No. 17-2, at 4.) According to the opinion from Schutte & Delsol Gojon, this privilege extends beyond criminal matters to situations where a defendant confesses to criminal wrongdoing before a different tribunal. (*Id.* at 3.) Cartograf USA argues that, because criminal proceedings against Páramo — Cartograf USA's officer, director and beneficiary — exist in Mexico, the requested materials here would be undiscoverable if subpoenaed in Mexico, as discovery would violate the Company's privilege under Mexican law to not incriminate itself or its officers and directors. (Reply at 5.) To Cartograf USA, the Application thus constitutes an

18

impermissible attempt to circumvent privilege-based restrictions on proof-gathering in Mexico. (Mot. at 11.)  In response, the Banorte Parties argue that Cartograf USA's privilege argument regarding the right against self-incrimination does not align with the text of § 1782, and that in any case, the Court does not need to (and should not) resolve the question of what information could be discoverable by a Mexican tribunal.  (Opp. at 7–8.)

Cartograf USA correctly points out that the statute's text stipulates that "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any *legally applicable privilege*."  (Reply at 4, citing 28 U.S.C. § 1782(a)) (emphasis added by Reply).  The Court therefore considers whether "any legally applicable privilege" encompasses privileges in foreign proceedings, i.e., whether § 1782 and the third *Intel* factor require the Court to assess the merits of Cartograf USA's argument regarding Mexican legal privilege doctrine.

In *Intel*, the Supreme Court, while noting that § 1782(a) "expressly shields privileged material," held that the statute does not impose a blanket requirement that sought-after evidence be discoverable under laws governing a foreign proceeding.  *Intel*, 542 U.S. at 260.  But courts have disagreed on whether § 1782(a) requires federal district courts to shield material falling under a *foreign* legal privilege.  *Compare In re Grand Jury Proc., Doe No. 700*, 817 F.2d 1108, 1112 (4th Cir. 1987) (§ 1782(a) "forbids the taking of testimony in violation of any privilege, including the *Philippine* privilege against self-incrimination") (emphasis added), with *In re Request from Canada Pursuant to Treaty Between the U.S. & Canada on Mut. Legal Assistance in Crim. Matters*, 155 F. Supp. 2d 515, 518 (M.D.N.C. 2001) (finding that "[w]hether 'any legally applicable privilege' includes foreign privileges is a matter of debate"); *id.* at 520 (holding that the relevant "depositions should be taken and [foreign] courts can later, if

19

necessary, determine the admissibility of this discovery"). Notably, the Fourth Circuit's

instruction in 1987 that "any privilege" pursuant to § 1782(a) included a foreign country's

privilege against self-incrimination was not actually dispositive in that case.[6] *In re Grand Jury*

*Proc.* predated *Intel*, where the Supreme Court explicitly overruled multiple other circuits'

holdings that the statue imposed a foreign-discoverability requirement, but nonetheless did not

resolve this foreign privilege question. *Intel*, 542 U.S. at 253. And since *Intel*, neither the

Fourth Circuit nor a district court within this circuit has appeared to revisit the *In re Grand Jury*

*Proc.* panel's cursory reference to § 1782(a) directly encompassing a foreign privilege.

After *Intel*, however, courts outside the Fourth Circuit have concluded that the

prohibition of § 1782(a) against violating any privilege extends to foreign privileges. *See*

*Ecuadorian Plaintiffs v. Chevron Corp.,* 619 F.3d 373, 378 (5th Cir. 2010) (holding that "the

legislative history of 28 U.S.C. § 1782 suggests that parties may rely on foreign privileges to

shield information from discovery in the United States"); *Baumer v. Schmidt*, 423 F. Supp. 3d

393, 406 (E.D. Mich. 2019) (approvingly citing *In re Grand Jury Proc.*, 817 F.2d at 1112, and

*Ecuadorian Plaintiffs*, 619 F.3d at 378); *Midwest Feeders, Inc. v. Bank of Franklin,* 2016 WL

7422560, at *5 n.7 (S.D. Miss. May 16, 2016) (acknowledging the Fifth Circuit's holding in

*Ecuadorian Plaintiffs*, 619 F.3d at 378); *In re Tinsel Grp., S.A. for An Ord. Directing Discovery*

*in Aid of Foreign Proceeding Pursuant to 28 U.S.C. Sec. 1782*, 2014 WL 243410, at *2 (S.D.

Tex. Jan. 22, 2014) (same).

---

[6]     The *In re Grand Jury Proc.* panel held that § 1782(a) did not apply to the subpoenas at
issue in the case, because they arose from a federal grand jury subpoena, and therefore the
Philippine privilege against self-incrimination did not apply. *In re Grand Jury Proc.*, 817 F.2d at
1112.

In the absence of recent guidance from the Fourth Circuit, the Court finds this line of case law persuasive and concludes that § 1782(a) shields from discovery materials that clearly fall under a foreign privilege. At the same time, courts since *Intel* have disfavored wading into admissibility or discoverability disputes regarding foreign privilege law, absent "authoritative proof" that the discovery request violates a legal privilege. *See Ecuadorian Plaintiffs*, 619 F.3d at 378 (ruling that "[t]o avoid speculative forays into legal territories unfamiliar to federal judges, parties must provide authoritative proof that a foreign tribunal would reject evidence because of a violation of an alleged foreign privilege"); *In re Veiga*, 746 F. Supp. 2d at 26 (noting that "courts have concluded that the statute's protection extends to privileges recognized by foreign law, but consonant with courts' reticence to delve into complex questions of foreign law, parties are generally required to provide clear and authoritative proof that a foreign tribunal would reject evidence pursuant to a foreign privilege."). Moreover, courts have found that providing an affidavit from foreign counsel "who expounds on general principles of [foreign] privilege law" does not constitute "authoritative proof," in the absence of "any judicial, executive, or legislative declaration that clearly demonstrates that allowing discovery in this case would offend [foreign] judicial norms." *In re Tinsel Grp.*, 2014 WL 243410, at *2.

The Court therefore examines whether Cartograf USA has "clearly and definitively established" that the requested discovery here would violate Mexico's privilege against self-incrimination. *Id.* The Court finds that Cartograf USA has not done so. The opinion from Schutte & Delsol Gojon that Cartograf USA offers to bolster its privilege argument "expounds on general principles of [Mexican] privilege law," *id.*, through explaining that all defendants — both individuals and legal entities — possess a right against self-incrimination in Mexico. (ECF No. 17-2, at 2.) But beyond high-level explanation of this principle, the law firm equivocates,

characterizing as its "opinion" that "seeking to compel an individual and/or legal entity in a jurisdiction where they are not the subject of criminal charges to provide information that ultimately will, or could, be used against them in a criminal proceeding in Mexico" violates privilege. (*Id.* at 4.) The firm concedes that "there is not much judicial precedent" on the specific circumstances raised by Cartograf USA's situation, stating that "certain rules and canons of interpretation are to be considered." (*Id.* at 3.)[7]

Accordingly, because Cartograf USA has "not pointed to any 'judicial, executive or legislative declaration' that clearly demonstrates that allowing discovery in this case would offend [Mexican] judicial norms," the Schutte & Delsol Gojon opinion, standing alone, does not persuade the Court. *Ecuadorian Plaintiffs*, 619 F.3d at 378. To be sure, Cartograf USA has raised plausible arguments regarding potential circumvention of proof-gathering restrictions in Mexico. But absent "authoritative proof" that the subpoena would violate Cartograf USA's privileges under Mexican law, the Court refrains from a "speculative foray," *Ecuadorian Plaintiffs*, 619 F.3d at 378, that would involve "delving into the . . . technical question of discoverability under foreign laws in considering a § 1782 request for judicial assistance." *In re Czech Republic*, 748 F. Supp. 2d at 527. While not conclusively in favor of either party, the third *Intel* factor therefore leaves the Court unpersuaded that the subpoena merits quashing.

---

[7]     The firm's equivocations go further. (ECF No. 17-2, at 3) (stating that Mexico's "Supreme Court drew a distinction between the confession of a criminal act, considering it covered by this right [against self-incrimination], and the provision of incriminatory evidence in general, which it ruled as not covered by this right once it has been legally obtained and becomes part of a proceeding"); (*id.* at 4) (stating that "*it may be necessary to argue and demonstrate that* the foreign legal entity has a plausible legal contingency to become . . . a defendant, within the Mexican criminal proceedings, or, that the fact that the defendant is the ultimate shareholder of said legal entity is reason enough for said entity to be covered by defendant's right against self-incrimination, taking into account the aforementioned principles") (emphasis added).

### 4.      Unduly Burdensome or Intrusive Discovery

As to the fourth *Intel* factor, "[r]equests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information and appear to be a broad fishing expedition for irrelevant information." *In re P.T.C. Prod., AG*, 2020 WL 7318100, at \*2 (cleaned up).  For example, if a "substantial volume of data and materials" requested lies outside the federal court's district or the United States, the fourth *Intel* factor counsels against discovery, as bringing these materials "into the United States for subsequent use in proceedings abroad" would constitute "a nonsensical result." *In re Eli Lilly*, 37 F.4th at 168.  Indeed, "§ 1782 discovery should be denied where an applicant "can obtain the information from other sources without imposing a burden' on a non-party to the foreign action." *In re Elliott*, 2022 WL 1159692, at \*4 (cleaned up).  However, a party's showing that the requested documents qualify as necessary to support its claims in the foreign proceeding weighs in favor of granting a § 1782(a) application. *In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37, 39 (2d Cir. 2017).  And recently, the Eleventh Circuit held that where a U.S. company and Mexican entities shared common ownership and close business ties, § 1782 discovery did not qualify as unduly burdensome, because the U.S. business entity exercised requisite "control" over documents within the Mexican entities' physical possession or custody. *Gonzalez v. Verfruco Foods, Inc.*, 2023 WL 1794391, at \*3 (11th Cir. Feb. 7, 2023) ("Sufficient 'control' may be established for discovery purposes by showing that 'affiliated corporate entities . . . have actually shared responsive information and documents in the normal course of their business dealings.'").

Cartograf USA argues that the Banorte Parties can use the Mexican legal proceedings to access all documents related to Cartograf Mexico and Páramo, as Mexican law permits release of a subsidiary's records by a parent company.  (Mot. at 17.)  The Company also states that it has

23

no current employees and that its records are not in Virginia, (*id.*), while characterizing the Banorte Parties' requests as "both intrusive and overly broad," because they ask for "any and all" documents between Cartograf USA and an array of entities and individuals, (*id.* at 14–16). The Banorte Parties do not contest Cartograf USA's statement that the Company does not keep its records in Virginia. Especially when evaluated along with the Company's claim that Cartograf Mexico — a party in the Mexican proceedings — could access the requested records, Cartograf USA's point about the lack of records in this District lends strength to its position on this *Intel* factor. *In re Eli Lilly.*, 37 F.4th at 168.

At the same time, the Banorte Parties' allegation that Páramo has not cooperated with the ongoing Mexican proceedings and has "absconded from the jurisdiction of the Mexican courts," (Opp. at 9), creates at least some doubt that the Banorte Parties "'can obtain the information from other sources without imposing a burden' on a non-party to the foreign action." *In re Elliott*, 2022 WL 1159692, at *4. And the Court has already determined that the requested information, which would likely shed light on Cartograf USA's corporate governance and financial inflows and outflows, appears integral to ongoing civil actions, because the Banorte Parties have alleged that Páramo used his various business entities to shield money he owed. (Opp. at 12.) And while the Court agrees with Cartograf USA that the discovery request casts a relatively sweeping net, the Application does tie each document category to Cartograf Mexico and Páramo.

In exercising its wide discretion in analyzing a § 1782(a) application, *In re Naranjo*, 768 F.3d at 347, the Court balances the relatively high burden that the subpoena presents to this U.S. subsidiary with the uncertainties surrounding the ongoing Mexican proceedings, and finds that the fourth *Intel* factor tilts slightly in favor of Cartograf USA. Given the Fourth Circuit's instructions that not *every* factor must weigh in favor of one side, *In re Eli Lilly*, 37 F.4th at 168,

24

and that district courts bear responsibility for the ultimate balancing of the discretionary factors, the Court concludes that Cartograf USA's arguments on the *Intel* factors do not require disruption of the Court's prior finding, (ECF No. 9), that the Banorte Parties have satisfied the standard for granting their Application, subject to the following exclusion.

Cartograf USA specifically takes issue with the Banorte Parties' request for the Company's tax records, which Cartograf USA contends the Court should shield under the qualified privilege for tax returns articulated by *Eastern Auto Distributors, Inc. v. Peugeot Motors of America, Inc.*, 96 F.R.D. 147, 149 (E.D. Va. 1982). (Reply at 6.) As this Court has subsequently reiterated, "[r]elevant case law reveals that there is a 'qualified privilege . . . disfavor[ing] the disclosure of income tax returns as a matter of general federal policy.'" *Reuben-Cooke v. Bd. of Trustees of Univ. of the D.C.*, 2009 WL 10730782, at *1 (E.D. Va. Apr. 10, 2009) (citing *Eastern Auto Distributors*, 96 F.R.D. at 148–49). In applying this qualified privilege, this Court has employed a two-prong test to assess when a party seeking discovery can overcome the privilege: (1) the requesting party must show that the tax returns contain specific information with relevance to the subject matter at issue; and (2) the Court then determines whether a compelling need exists for the information, because the requesting party cannot obtain it elsewhere. *Reuben-Cooke*, 2009 WL 10730782, at *1. On the second step, the burden shifts to the party opposing discovery to identify an alternate means for obtaining the information. *Id.*

The Application already seeks plenty of other sources of detailed financial information that could likely shed light on the alleged concealment of assets by Páramo, including Cartograf USA's bank account and assets; exchanges with business entities associated with the Company; payments and other transfers between Cartograf USA and related entities; and "any other sources of funds or liabilities of Cartograf USA." (ECF No. 8–9.) The Banorte Parties do not even

respond to Cartograf USA's objection that the tax records fall under the *Eastern Auto Distributors* qualified privilege, nor do they explain why the tax records specifically qualify as relevant here. (Reply at 6.) Accordingly, in light of the general presumption against disclosing tax records and based on the absence of any attempt by the Banorte Parties to rebut this presumption, the Court finds that Cartograf USA's tax records qualify for protection from disclosure. *Reuben-Cooke*, 2009 WL 10730782, at *1.

The Court retains the power to tailor a discovery order to account for the tax records' exclusion. *See, e.g.*, *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015) (holding that "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright"); *In re Newbrook*, 620 F. Supp. 3d at 313 (noting that the court could grant a § 1782(a) application while limiting it to a particular request). The Court will therefore carve out the tax records from the rest of the Application here.

## IV. CONCLUSION

For the foregoing reasons, the Court will hereby DENY in part the Motion to Quash the Subpoena against Cartograf USA, (ECF No. 16), and GRANT in part the Motion with respect to Cartograf USA's tax records.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

An appropriate Order shall issue.

_____/s/_____

David J. Novak
United States District Judge

Richmond, Virginia
Date: October 12, 2023

26