IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

IN RE APPLICATION OF BANCO MERCANTIL
DE NORTE, S.A., INSTITUCIÓN DE BANCA
MÚLTIPLE, GRUPO FINANCIERO BANORTE
AND ARRENDADORA Y FACTOR BANORTE,
S.A. DE C.V., SOCIEDAD FINANCIERA DE
OBJETO MÚLTIPLE, GRUPO FINANCIERO
BANORTE,

        Applicants,                         Misc. No. 3:23mc08 (DJN)

FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782
TO OBTAIN DISCOVERY IN AID OF FOREIGN
PROCEEDINGS

## MEMORANDUM OPINION

This matter comes before the Court on Cartograf USA, Inc.'s ("Cartograf USA") Motion

to Stay Discovery Pending Appeal, ("Motion," ECF No. 27). Cartograf USA moves to stay

discovery pending the outcome of its appeal to the Fourth Circuit of the Court's October 12,

2023 order, (ECF No. 25), denying Cartograf USA's motion to quash the subpoena, (ECF No.

16). Banco Mercantil del Norte, S.A., Institutción de Banca Múltiple, Grupo Financiero Banorte

("Banorte") and Arrendadora y Factor Banorte, S.A. de C.V., Sociedad Financiera de Objeto

Múltiple, Grupo Financiero Banorte ("Banorte A&F" and, together with Banorte, the "Banorte

Parties") oppose the Motion. For the reasons set forth below, the Court will DENY the Motion.

## I.    BACKGROUND

On July 17, 2023, the Banorte Parties filed their *ex parte* Application for an Order

Pursuant to 28 U.S.C. § 1782 to Obtain Discovery for Use in Foreign Proceedings, (the

"Application" (ECF No. 1)). The Banorte Parties sought subpoenas requiring three Virginia-

based entities — Cartograf USA, Timmons Group, Inc. (the "Timmons Group") and the Economic Development Authority of the County of Chesterfield (the "EDA") — to produce testimony and documentary evidence relevant to "ongoing and forthcoming proceedings in Mexico." (ECF No. 1 at 1–2.) Those proceedings concern the Banorte Parties' allegations that Juan José Páramo Riestra ("Páramo") and his company, Cartograf, S.A. de C.V. ("Cartograf"), defrauded the Banorte Parties of millions of dollars by "enter[ing] into a series of financial agreements and promissory notes with the Banorte parties" before subsequently absconding with "a large portion of the money" borrowed. (ECF No. 2 at 2–4.) The Banorte Parties sought documents and testimony which they contended will shed light on the mechanics of Páramo's alleged scheme to defraud and his "continued concealment of funds" from the Mexican courts. (*Id.* at 8.)

The Court granted the Application. (ECF No. 9.) On September 12, 2023, Cartograf USA filed a motion to quash the subpoena, in lieu of compliance. (ECF No. 16.) By Memorandum Opinion and Order on October 12, 2023, the Court denied that motion, except with respect to Cartograf USA's tax returns. (ECF Nos. 24–25.) The Court explained that the Banorte Parties satisfied the mandatory statutory factors for a § 1782(a) subpoena: (1) the person from whom the discovery is sought resides or is found in the district of the district court to which application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by a foreign or international tribunal or "any interested person." (ECF No. 24 at 5.) Next, the Court addressed the discretionary factors, set forth by the Supreme Court in *Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241 (2004), that guide the Court's application of § 1782(a):

(1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 request 'conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;' and (4) whether the proposed discovery requests are 'unduly intrusive or burdensome.'

*In re P.T.C. Prod. & Trading Co., AG*, 2020 WL 7318100, at *2 (W.D.N.C. Dec. 11, 2020)

(quoting *Intel*, 542 U.S. at 264–65). Noting its broad discretion to weigh and balance these

factors, the Court determined that a holistic analysis of the *Intel* factors favored the Banorte

Parties. (ECF No. 24 at 24–25.) Lastly, the Court tailored its discovery order to exclude

Cartograf USA's tax records from the subpoena. (*Id.* at 26.)

Cartograf USA timely appealed to the Fourth Circuit, (ECF No. 26), and filed the instant

Motion, (ECF No. 27), seeking to stay discovery pending the outcome of its appeal. On

November 20, 2023, the Banorte Parties filed a response in opposition to the Motion. (ECF No.

30.) Cartograf USA filed its reply brief on November 27, 2023, rendering the Motion ripe for

review. (ECF No. 32.)

## II.     STANDARD OF REVIEW

The Court begins by observing its broad discretion to grant or deny a motion to stay.

*Gibbs v. Plain Green, LLC*, 331 F. Supp. 3d 518, 529 (E.D. Va. 2018). Nonetheless, granting a

stay pending appeal constitutes "extraordinary relief for which the moving party bears a heavy

burden." *Personhuballah v. Alcorn*, 155 F. Supp. 3d 552, 558 (E.D. Va. 2016). Whether to

grant a stay of discovery pending appeal depends on four factors articulated by the Supreme

Court:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

3

*Nken v. Holder*, 556 U.S. 418, 433–34 (2009). Of these factors, the Supreme Court has held that the first two qualify as "the most critical." *Id.* at 434.

### III.    ANALYSIS

The Court finds that the *Nken* factors clearly disfavor granting a stay here, and therefore exercises its substantial discretion to deny the Motion. The Court addresses each factor in turn.

#### A.    **Likelihood of Success on the Merits**

Cartograf USA argues that the first factor merely poses the question of "whether the issues presented on appeal could be rationally resolved in favor of the party seeking the stay." (Cartograf USA's Mem. in Supp. of Mot. to Stay Discovery Pending Appeal ("Mem.") (ECF No. 27) at 3, citing *Realvirt, LLC v. Lee*, 220 F. Supp. 3d 704, 706 (E.D. Va. 2016).) In its Motion, Cartograf USA contends that the Fourth Circuit could rationally resolve this matter in its favor in light of the inherently discretionary nature of § 1782(a) discovery orders, as "reasonable minds may differ on whether the Application should have been granted." (Mot. at 3.)

But as the Banorte Parties highlight, the Fourth Circuit applies the abuse-of-discretion standard when reviewing a district court's grant of a discovery application pursuant to § 1782(a). (Banorte Parties' Opp. to Mot. to Stay Discovery Pending Appeal ("Opp.") (ECF No. 30) at 4, citing *In re Naranjo*, 768 F.3d 332, 347 (4th Cir. 2014).) The proper question, therefore, is whether the Fourth Circuit could rationally conclude that this Court *abused its discretion* in granting the Application with the tax records carveout. "A district court abuses its discretion when it acts in an arbitrary manner, when it fails to consider judicially recognized factors limiting its discretion, or when it relies on erroneous factual or legal premises." *Wall v. Rasnick*, 42 F.4th 214, 220 (4th Cir. 2022).

4

Here, the Court twice examined the factual and legal premises in close detail, concluding that the Application (albeit with the tax records exclusion) qualified as permissible under § 1782(a). (ECF Nos. 9, 24.) Finding that the Banorte Parties' Application sufficiently detailed the foreign proceedings for which the discovery would be "for use," the Court held that the Application satisfied the sole statutory factor of § 1782 that was subject to substantive dispute. (ECF No. 24 at 6–11.) The Court thus fails to see a "strong likelihood" that the Fourth Circuit could rationally resolve the statutory factors in favor of Cartograf USA. *United States v. Fourteen Various Firearms*, 897 F. Supp. 271, 273 (E.D. Va. 1995).

With respect to the *Intel* factors, the Court reviewed caselaw establishing that § 1782(a) does not impose an exhaustion requirement on the party seeking discovery, concluding that because Cartograf USA did not qualify as a participant in a foreign proceeding, this factor supported discovery. (ECF No. 24 at 11–13.) In addition, the Court noted that in the absence of "reliable evidence" that the Mexican courts would not use any of the discovery material, the second *Intel* factor — a foreign tribunal's openness to U.S. judicial assistance — weighed in favor of the Banorte Parties, particularly in light of Mexican courts' general receptivity to U.S. courts' help with discovery. (*Id.* at 14–15.) Addressing the potential for circumvention of foreign proof-gathering restrictions, the Court first categorically rejected Cartograf USA's argument regarding the United States' and Mexico's Mutual Legal Assistance Treaty, and then held that in the absence of "authoritative proof" that the subpoena would violate Cartograf USA's privileges under Mexican law, the subpoena would stand. (*Id.* at 15–22.) Turning to the fourth *Intel* factor — unduly burdensome or intrusive discovery — the Court found that while this factor tilted slightly to Cartograf USA, Fourth Circuit guidance instructs that not *every* factor must weigh in favor of one side, as the district court retains discretion over the ultimate

5

balancing test. (*Id.* at 24–25); *see also In re Eli Lilly & Co.*, 37 F.4th 160, 168 (4th Cir. 2022) (holding that a district court did not abuse its discretion in heavily weighing two of the four *Intel* factors when it denied a § 1782(a) discovery application). Accordingly, the Court finds that Cartograf USA has a steep hill to climb on appeal, based on the abuse-of-discretion standard, and has not satisfied its "heavy burden" by merely noting the discretionary nature of § 1782(a) discovery orders. *Personhuballah*, 155 F. Supp. 3d. at 558.

Cartograf USA elaborates in its reply brief, zeroing in on two primary reasons for why it is likely to prevail on the merits. First, Cartograf USA argues that whether a district court may grant a § 1782(a) application, when the applicant has filed both civil and criminal proceedings against the respondent but only provides the district court with details regarding the civil matter, constitutes an issue of first impression within this circuit. (Cartograf USA's Reply Br. ("Reply") (ECF No. 32) at 2.) Second, Cartograf USA points to the expert opinion filed to support its privilege claim under Mexican law, contending that a "rational appellate court" could give greater credence to the expert opinion. (*Id.* at 2–3.) Courts within this circuit have stressed the general impropriety of considering arguments that litigants raise for the first time in a reply brief. *See Hunt v. Nuth, 57* F.3d 1327, 1338 (4th Cir. 1995) (concluding that crediting arguments raised originally in a reply brief "would be unfair to the appellee and would risk an improvident or ill-advised opinion on the legal issues raised"); *United States v. Vogt*, 910 F.2d 1184, 1198 (4th Cir. 1990) (noting, but not invoking, procedural waiver of issue raised for first time in defendant's reply brief); *M.B. v. Fairfax Cnty. Sch. Bd.*, 2023 WL 5367524, at *11 (E.D. Va. Aug. 22, 2023) (holding that "it is well-established that an argument raised for the first time in a reply brief is waived and will not be considered").

The Court therefore finds that Cartograf USA procedurally waived its arguments with respect to the criminal proceeding and expert declaration by raising them for the first time in its reply brief. However, even assuming arguendo that procedural waiver of these issues did *not* occur, the Court reiterates that because the Fourth Circuit applies an abuse-of-discretion standard here, Cartograf USA has failed to carry its heavy burden, in light of the Court's prior, repeated close examinations of the legal and factual underpinnings to this matter. (ECF Nos. 9, 24.)

**B.      Irreparable Harm to the Moving Party**

Cartograf USA argues that the absence of a stay could destroy its right to a meaningful appeal, because even if the Fourth Circuit were to reverse this Court, such an outcome would come too late to prevent the harm arising from the disclosure of the sought-after material. (Mot. at 4.) Cartograf USA adds that no recourse would exist for clawing back the disclosed materials during the pendency of the appeal. (*Id.*) In response, the Banorte Parties highlight an array of court opinions denying stays pending appeal of § 1782 subpoenas to underscore that irreparable harm does not automatically incur to a party subject to the discovery order. (Opp. at 5–6.) Cartograf USA leverages its reply brief to argue that the Banorte Parties misconstrue the applicability of these cases, because Cartograf USA's appeal involves the protection of its privilege against self-incrimination under Mexican law, rather than a "garden-variety discovery" dispute. (Reply at 4.)

As with its briefing on the first factor, Cartograf USA failed to argue in its Motion that it would suffer irreparable harm due to a violation against its privilege against self-incrimination, instead raising this justification in its reply brief. (*Id.*) Procedural waiver thus again poses a problem for Cartograf USA. *Hunt, 57* F.3d at 1338. In its Motion, Cartograf USA does briefly note that it "has further argued that the discovery seeks production of documents and testimony

7

that are privileged under Mexican law," but does so while discussing the *public-interest factor*, not the irreparable harm factor. (Mot. at 5.)

Yet even if the Court were to take this fleeting reference in the Motion's discussion of the fourth factor and transmit any persuasive value to the second factor, the Court finds that Cartograf USA has failed to show that it will suffer irreparable harm absent a stay. The principal case that Cartograf USA cites to support its argument that the absence of a stay would inflict irreparable harm by denying the company its Mexican legal privilege against self-incrimination is *United States v. Under Seal (In re Search Warrant Issued June 13, 2019)*, 942 F.3d 159 (4th Cir. 2019) ("*In re Search Warrant*"). But there, the Fourth Circuit dealt with a district court's failure (in a case not involving a § 1782 application) to address "unrebutted evidence" that much of the sought-after discovery material comprised documents protected as attorney-client communications and attorney work product. *Id.* at 172. Here, the record does not involve unrefuted evidence about core, clearly applicable privileges under federal law. Instead, Cartograf USA and the Banorte Parties vigorously grappled through their briefing on the motion to quash with whether the Court should consider the potential privilege against self-incrimination under Mexican law. (ECF Nos. 17, 21, 23.) After a thorough analysis, this Court concluded that Cartograf USA failed to clearly and definitively establish that the requested discovery would violate Mexico's privilege against self-incrimination. (ECF No. 24 at 18–22.) Accordingly, *In re Search Warrant*, which concerned a court's failure to consider the unrebutted application of American legal privileges, is inapposite.

Cartograf USA correctly notes that the Banorte Parties have failed to produce evidence that they would miss specific deadlines in the ongoing Mexican proceedings if the Court imposed a stay of discovery pending appeal. (Reply at 5.) But the Banorte Parties do not bear

8

the burden of establishing irreparable harm; the moving party does. *Brea Union Plaza I, LLC v. Toys R Us, Inc.*, 2018 WL 3543056, at \*5 (E.D. Va. July 23, 2018). Because the Court has already concluded that whether the sought-after discovery implicates Cartograf USA's privilege against self-incrimination under Mexican law constitutes a far-from-settled question, (ECF No. 24 at 18–22), Cartograf USA fails to show that it clearly will suffer irreparable harm in the absence of a stay.

### C.     Substantial Injury to the Non-Moving Party

Cartograf USA argues that the Banorte Parties would suffer minimal, if any, harm from a stay, because they have not demonstrated that they need to obtain the discovery material at issue here in an expedited fashion for use in the ongoing Mexican legal proceedings. (Mot. at 4–5.) Cartograf USA relies on this Court's decision in *Northrop Grumman Tech. Servs. v. DynCorp Int'l LLC*, 2016 U.S. Dist. LEXIS 78864, at \*13 (E.D. Va. June 16, 2016). There, the Court determined that the primary potential injury to the non-moving party amounted to a later trial date in a different court, which "pale[d] in comparison to the potential harm" — having to simultaneously litigate the appeal before the Fourth Circuit and the underlying case in state court — that the moving party would suffer in the absence of a stay. 2016 U.S. Dist. LEXIS 78864, at \*12–13. The Banorte Parties argue that *Northrop Grumman* bears little weight here, because rather than simply facing a delayed trial date, they could be unable to use the sought-after discovery at all, as a stay may result in the foreign proceedings concluding during the pendency of the appeal. (Opp. at 6.)

The Court agrees with Cartograf USA that the Banorte Parties have not demonstrated from the record of the Mexican civil case that those proceedings will imminently conclude or entail specific deadlines that the Banorte Parties would miss due to a stay of discovery. (Reply at

5.) Nonetheless, even where the non-moving party "does not quantify or elaborate on the potential harm," the failure to do so does not necessarily swing this factor to the movant, who "has the burden of showing the *absence* of substantial harm" and who cannot satisfy this factor without doing so. *Brea Union Plaza I*, 2018 WL 3543056, at \*5. A delayed trial date certainly seems less injurious than a non-moving party's absolute inability to draw any value from the discovery material due to the conclusion of foreign proceedings. And while the Banorte Parties fail to establish with particularity the upcoming deadlines of the Mexican civil case, they *do* present evidence that the Mexican courts have already issued freezing orders against the assets of Juan José Páramo Riestra ("Páramo"), the sole administrator and legal representative of Cartograf USA's parent company in Mexico. (ECF No. 2 at 3; ECF No. 3 Ex. B.) Because the § 1782 discovery here seeks to identify assets that are subject to the Mexican court orders, a stay could result in the liquidation, restructuring or disappearance of the relevant assets — either through intentional acts or simply through the passage of time — thereby mooting the value of the discovery material. (Decl. of Richard C. Lorenzo (ECF No. 31) at 2.)[1] Cartograf USA

---

[1]     The Parties quibble over whether an upcoming sale via public auction of Cartograf USA's Virginia warehouse constitutes a bad-faith attempt by Cartograf USA to delay and disrupt discovery. To the Banorte Parties, the recent listing of the Virginia warehouse, which they characterize as Cartograf USA's "principal asset," raises questions about whether Cartograf USA seeks to liquidate its assets to evade accountability in Mexican courts. (Opp. at 7.) Cartograf USA replies that the Banorte Parties cannot impute bad-faith intentions to Cartograf USA on this basis, stating that the company "is not administering or managing funds related to the Virginia litigation," and producing a Chesterfield County Circuit Court order that notes that Cartograf USA has asserted objections in the proceedings related to the auction. (Reply at 6, citing ECF No. 32-1.) The Court does not need to resolve whether the warehouse sale reflects an attempt to evade discovery, because regardless of *intent*, the fact remains that an apparently valuable asset of the moving party may soon cease to be available. Accordingly, the auction points to the harm that a stay could reasonably inflict on the discovery process here: by delaying access to assets that are subject to the Mexican court orders, a stay could vitiate the discovery material to such a degree as to render the material useless to the foreign proceedings.

therefore fails to show the absence of substantial harm to the Banorte Parties and cannot meet this factor.

### D.     The Public Interest

Comity constitutes the "animating purpose of § 1782," as "[p]ermitting federal courts to assist foreign and international governmental bodies promotes respect for foreign governments and encourages reciprocal assistance." *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 621 (2022). Cartograf USA argues that because § 1782 jurisprudence "continues to evolve and is subject to interpretation," the public interest favors an appellate court resolving this dispute. (Mot. at 5.) But if that were the case, the public interest would *always* favor granting a stay to § 1782 discovery pending appeal, based on the statutory regime's discretionary nature. The public interest is not so one-sided. *See, e.g., In re Application of Hornbeam Corp.*, 2017 WL 2241522, at *2 (S.D.N.Y. May 22, 2017) (holding that "the public interest weighs in favor of denying the stay, as the discovery granted under § 1782 in this case as well as the anticipated use of the materials gathered as a result of that discovery serve the public interests in justice, fair play, and full disclosure, as well as the truth in foreign actions"); *In re Gushlak*, 2012 WL 2564466, at *7 (E.D.N.Y. Jan. 30, 2012), *report and recommendation adopted*, 2012 WL 1514824 (E.D.N.Y. Apr. 30, 2012) (finding that a stay "would plainly undermine" § 1782's goals of ensuring that "litigants in international litigation would have an efficient way to get the discovery they need" and "would not be in the public interest").

The Banorte Parties respond that the quick and efficient administration of this § 1782 action promotes the core aim of the statutory regime, and that a stay would allow Cartograf USA to "endlessly delay" previously authorized, critical discovery. (Opp. at 8.) The Court agrees,

11

"particularly where the merits so clearly favor the Applicant," *In re Gushlak*, 2012 WL 2564466, at *7, that a stay would undermine the statutory regime's animating purpose of comity.

Cartograf USA emphasizes the importance of adjudicating its argument regarding the application of Mexican legal privilege to this discovery. (Mot. at 5.) Protection of clearly applicable legal privileges certainly stands as a paramount public interest, as the statute itself stipulates that "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." 28 U.S.C. § 1782(a). But as the Court explained in its October 12, 2023 Memorandum Opinion, absent "authoritative proof" that clearly and definitively establishes the applicability of a foreign legal privilege, courts assessing a § 1782(a) application generally refrain from a "speculative foray" into technical questions of discoverability in the foreign forum. (ECF No. 24 at 21–22, citing *Ecuadorian Plaintiffs v. Chevron Corp.,* 619 F.3d 373, 378 (5th Cir. 2010) and *In re Tinsel Grp., S.A. for An Ord. Directing Discovery in Aid of Foreign Proceeding Pursuant to 28 U.S.C. Sec. 1782,* 2014 WL 243410, at *2 (S.D. Tex. Jan. 22, 2014).) The Court previously found that Cartograf USA failed to present such ironclad proof. (ECF No. 24 at 21–22.) Based on the need to facilitate the spirit of comity and prompt administration of § 1782(a) actions, the public interest weighs against a stay.

## IV.    CONCLUSION

For the foregoing reasons, Cartograf USA has failed to meet its heavy burden on the four

factors that apply to a motion to stay discovery pending appeal. The Court will therefore DENY the Motion, (ECF No. 27).

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

An appropriate Order shall issue.

_____/s/_____

David J. Novak
United States District Judge

Richmond, Virginia
Date: November 30, 2023

13